2021 IL App (1st) 190362-U

No. 1-19-0362

September 14, 2021

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 10 CR 12502 |
| | ) | |
| PARIS McGEE, | ) | Honorable |
| | ) | Timothy J. Joyce, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Justices Ellis and Burke concurred in the judgment.

ORDER

¶ 1     *Held*:   The circuit court's summary dismissal of defendant's *pro se* postconviction petition is affirmed where defendant's allegation of ineffective assistance of trial counsel is without arguable merit.

¶ 2     Defendant Paris McGee appeals from an order of the circuit court of Cook County summarily dismissing his *pro se* petition for relief filed under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)). On appeal, defendant contends the circuit court erred when it dismissed his petition because he raised an arguable claim that his trial counsel rendered

ineffective assistance when counsel failed to investigate and present testimony from an alibi witness. We affirm.

¶ 3 Following separate but simultaneous jury trials in November 2014, defendant and codefendant Toyious Taylor were convicted of first degree murder for the shooting death of off-duty Chicago police officer Thomas Wortham IV (Officer Wortham) and the felony murder of Brian Floyd, a co-offender in the acts leading to Officer Wortham's death. Defendant was also convicted of aggravated discharge of a firearm for shooting at Officer Wortham's father, retired Chicago police officer Thomas Wortham III (Mr. Wortham). Defendant and Taylor were convicted under a theory of accountability for the acts of Brian Floyd and his cousin Marcus Floyd. In a separate jury trial, Marcus Floyd was convicted of the two murders and attempted first degree murder of Mr. Wortham.

¶ 4 The facts of defendant's trial were initially presented in this court's prior order affirming his convictions on direct appeal. *People v. McGee*, 2017 IL App (1st) 150838-U. We discuss the evidence from the trial record as necessary for consideration of the issue in this appeal.

¶ 5 The shootings in this case occurred on the night of May 19, 2010. The next day, defendant surrendered to police at the police station accompanied by his mother, Donnette Golladay, and private attorney Anthony Burch. On May 22, 2010, Burch entered his appearance. We presume Burch represented defendant at the preliminary hearing two days later when defendant demanded trial. Around June 16, 2010, defendant and Taylor were jointly indicted under case number 10 CR 11196. Around July 28, 2010, a superseding indictment was issued against all three defendants under the current case number, 10 CR 12502. On August 4, 2010, appointed private attorney Debra Niesen appeared on behalf of defendant and filed a motion for discovery under the initial case

number. The trial court noted the new indictment and confirmed counsel had not been appointed under the new case number. The court appointed Niesen to represent defendant. On August 25, 2010, appointed counsel Joseph McElligott also entered his appearance for defendant. Niesen and McElligott jointly represented defendant throughout the remainder of the case. The record does not indicate the date Burch's representation ended, but it was prior to August 4, 2010, as Niesen was already the attorney of record by that date and Burch's name does not appear anywhere in the record other than on his appearance. The record does not contain reports of proceedings for the dates of June 10, June 16, and July 6, 2010, when the case was under a municipal number and the initial indictment number. On November 16, 2010, the trial court granted counsels' motion to retain an investigator to assist with their preparation of the case, including interviewing witnesses.

¶ 6       The evidence at trial established that about 11:30 p.m. on May 19, 2010, Officer Wortham began to ride his motorcycle away from his parents' home where he had been visiting. As Mr. Wortham watched his son from the front porch, he observed the Floyds stop Officer Wortham in the street. Brian Floyd pointed a gun at Officer Wortham's head. Marcus Floyd pointed his hand at Officer Wortham, but Mr. Wortham could not tell if Marcus had a gun. Mr. Wortham yelled at the Floyds to get away from his son. Brian Floyd pointed his gun at Mr. Wortham and told him to get back inside his house. Officer Wortham shouted "police," and Mr. Wortham heard gunshots. Mr. Wortham ran inside his house, retrieved his gun, and told his wife to call the police because their son had been shot.

¶ 7       During this time, Carolyn Wortham (Mrs. Wortham) looked out the front door of her house and observed two men pointing guns at her son, Officer Wortham. Officer Wortham was off his

motorcycle and had his weapon drawn. She heard Officer Wortham yell "Chicago police," then observed a muzzle flash from one of the other men's guns. Mrs. Wortham called 911.

¶ 8 Mr. Wortham returned outside with his gun and observed a red vehicle parked in front of his house facing the wrong direction on the one-way street. Mr. Wortham did not see his son anywhere. The passenger from the red vehicle was standing outside that vehicle holding a gun. Both the passenger and driver of the red vehicle were shouting to the Floyds, "[g]et in, get in." In court, Mr. Wortham identified defendant as the passenger and Taylor as the driver. Mr. Wortham observed the Floyds "pop up" on the side of his daughter's vehicle which was parked on the street. Mr. Wortham ran towards the red vehicle and told defendant and Taylor to get away from the Floyds. Mr. Wortham was within 10 feet of the red vehicle. Defendant got in the passenger's seat of the vehicle and Taylor sped away in reverse down the street. As they fled, defendant fired a gunshot at Mr. Wortham.

¶ 9 Mr. Wortham went around the rear of his daughter's vehicle and observed Officer Wortham's gun on the ground. He retrieved the gun and observed the Floyds at the front of the vehicle. Brian Floyd pointed a gun at Mr. Wortham. With a gun in each hand, Mr. Wortham fired multiple gunshots with both weapons, striking the Floyds. The Floyds fell to the ground. Mr. Wortham insured the Floyds were not moving, then looked for his son. He found Officer Wortham lying in the street 25 to 30 yards west of his initial location, conscious but not moving. Officer Wortham told his father, "[i]t hurts." Officer Wortham was transported to Christ Hospital where he succumbed to his gunshot wounds.

¶ 10 Brian Floyd died at the scene. Police identified him after finding his driver's license in his pocket. Police went to his home and notified his mother, Lucille Floyd, that her son was dead.

Police brought Lucille Floyd to the crime scene where she spoke with Detective John Otto. She told Otto that Brian and defendant were childhood friends, and Brian was friends with Taylor from the neighborhood. In court, Lucille Floyd identified defendant and Taylor as Brian's friends. After speaking with Lucille Floyd, Otto began looking for "Paris" and "Luke," a name Taylor was known by. When Otto drove Lucille Floyd home, Brian's red Pontiac was parked in front of her house. She told Otto that Brian often shared his vehicle with other people. The rear driver's side of the red vehicle was damaged.

¶ 11    Less than four hours after his son's murder, Mr. Wortham viewed a nine-person photo array and identified defendant as the passenger in the red vehicle who shot at him. He also identified the Floyds as the two men who approached Officer Wortham on the street. About a half hour later, Mr. Wortham viewed a second photo array and identified Taylor as the driver of the red vehicle. The following day, Mr. Wortham viewed a lineup and identified defendant as the passenger in the red vehicle. The next day, Mr. Wortham viewed a second lineup and identified Taylor as the driver of the red vehicle.

¶ 12    The autopsy revealed that in addition to his multiple gunshot wounds, Officer Wortham also sustained injuries consistent with being dragged by a vehicle. Police recovered a motorcycle helmet from the scene which appeared to have been dragged across concrete.

¶ 13    A neighbor of the Worthams' told police that her vehicle had been struck on the night of the murders leaving red scratches on the rear panel of her vehicle. Police recovered pieces of a broken taillight near the scene that matched Brian Floyd's vehicle. Fibers that could have originated from Officer Wortham's T-shirt were recovered from the undercarriage of Brian's vehicle. Defendant's DNA was found on two cups recovered from inside Brian's vehicle.

Defendant could not be excluded as a contributor to DNA recovered from the vehicle's steering wheel. Defendant's fingerprints were found in and around Brian's vehicle on an outside mirror, on the driver's side front door frame, and on a plastic compact disc wallet recovered from the front passenger door pocket inside the vehicle.

¶ 14    The defense presented testimony from Al Stewart, the Worthams' neighbor, who arrived home about 11:30 p.m. on the night of the murders and observed a body lying in the street. He knelt over the body but did not recognize Officer Wortham, who was wearing a motorcycle helmet with the face shield down and gasping for air. Stewart then heard Mr. Wortham yell, "[s]on of a bitches killed my son." Stewart observed Mr. Wortham standing in front of his daughter's vehicle. Mr. Wortham rushed towards Stewart holding a gun in his hand. Stewart acknowledged he may have told a detective that Mr. Wortham said to him, "[g]et away, I got two guns, I will shoot." Stewart repeatedly identified himself to Mr. Wortham so he would not get shot.

¶ 15    When admonishing defendant about his right to testify, the trial court asked him, "[a]re there any other persons you wish to present on your behalf?" Defendant replied, "[n]o, sir."

¶ 16    The jury found defendant guilty of the murders of Officer Wortham and Brian Floyd, and of discharging a firearm at Mr. Wortham. The trial court sentenced defendant to concurrent terms of natural life imprisonment without parole for the two murders, and a consecutive term of four years' imprisonment for aggravated discharge of a firearm.

¶ 17    On direct appeal, defendant argued that: (1) the State failed to prove him guilty beyond a reasonable doubt because Mr. Wortham's identification was unreliable; (2) his trial counsel rendered ineffective assistance because counsel failed to call an expert witness to testify about the factors that affect the reliability of eyewitness identifications; (3) the trial court erroneously

allowed the State to bolster Mr. Wortham's credibility by referring to him as a "trained observer" in its closing argument; and (4) the trial court erroneously admitted into evidence recordings of Mrs. Wortham's calls to 911 and Mr. Wortham's testimony that Officer Wortham's last words were "[i]t hurts." This court rejected those arguments and affirmed defendant's convictions. *People v. McGee*, 2017 IL App (1st) 150838-U.

¶ 18    On October 24, 2018, defendant filed the instant *pro se* postconviction petition under the Act alleging his trial counsel rendered ineffective assistance because counsel "failed to investigate and call witnesses whose testimony could have established an alibi defense." Defendant states he told his trial counsel he did not murder Officer Wortham and that "he accompanied a relative during the time the offense occurred." Defendant states trial counsel assured him the alibi witness, Cynthia Clark, would be contacted and called to testify at trial, but counsel did not investigate or call Clark. Defendant asserts that his defense of mistaken identity was vested in Clark's testimony. Defendant states he was prejudiced by counsel's deficient performance because it deprived him of a fair trial where Clark's testimony would have critically undermined Mr. Wortham's testimony and strengthened defendant's mistaken identity defense. Defendant further states that Clark's affidavit "affirms petitioner's own assertion that petitioner's trial counsel had not contacted her." He also claims an affidavit from his mother, Donnette Golladay, shows "trial counsel assured her that Cynthia Clarke would be contacted and pursued as an alibi witness." Defendant asserts the affidavits from him, Clark, and Golladay show "counsel did not investigate or call Clarke to provide the exculpatory testimony."

¶ 19    Defendant attached to his petition his own affidavit in which he avers that he told his trial counsel prior to trial that he did not murder Officer Wortham and that he was at Clark's house at

the time of the murder. Defendant maintains he told counsel Clark would vouch for his whereabouts at the time of the murder and provide alibi testimony. Defendant asserts counsel failed to investigate and call Clark to testify as an alibi witness which led to him being convicted for a murder he did not commit.

¶ 20    On November 19, 2018, defendant filed a *pro se* motion to supplement his petition with affidavits from Clark and Golladay. Golladay averred that on May 20, 2010, she called defendant and told him the police were looking for him regarding a murder that occurred the previous night. Defendant told her he had been at his cousin Cynthia's house since about 9:15 or 9:30 p.m., he stayed there the whole night, and he was still there. Golladay stated that she arranged for attorney Anthony Burch to meet her at Clark's house to escort defendant to the police station. Later that day, Clark called Golladay and told her to let Burch know that she could vouch for defendant's whereabouts from 9:30 p.m. on May 19 to May 20. Golladay stated that she called Burch later that evening and told him Clark was willing to come forward and vouch for defendant's whereabouts from 9:30 p.m. until the morning of May 20. Golladay averred that "Attorney Anthony Burch" assured her he would contact Clark and call her as an alibi witness if defendant went to trial. Golladay stated that she provided the attorney with Clark's information for that purpose. Golladay asserted, "Anthony Burch never contacted Cynthia to testify in regards to Paris whereabouts at the time of the crime[.]"

¶ 21    Clark averred in her affidavit that on May 19 her cousin, defendant, came to her house in the 1300 block of North Kildare in Chicago. That day they played cards, drank liquor, and smoked "weed" while listening to music. Defendant spent the night. The next day Golladay called and told defendant the police were looking for him. Golladay came to Clark's house with lawyer Anthony

Burch and picked up defendant. Clark called Golladay later that day and learned defendant was charged with a murder that occurred the night before. Clark assured Golladay there was "no way possible" defendant was involved because he had been at her house that day and slept there. Clark told Golladay "to let the lawyer Mr. Anthony Burch know" about defendant's whereabouts and to tell him that she would vouch for defendant. Clark stated that she knew "for a fact" that defendant was innocent and not involved in the murder on May 19. Clark concluded, "I was never contacted by Paris lawyer Mr. Anthony Burch nor was I called to testify on Paris behalf."

¶ 22    On December 20, 2018, the circuit court found that defendant's allegation of ineffective assistance of counsel was a matter of trial record that could have been raised on direct appeal, and therefore, it was waived. Alternatively, the circuit court noted that the decision to call a particular witness is a matter of trial strategy and stated that counsel could have decided Clark's testimony was not helpful. The court noted that Clark's testimony would have been contrary to Mr. Wortham's testimony and the DNA evidence that linked defendant to the murder and found there was "ample evidence" that pointed directly to defendant's involvement in the crime. The circuit court further found that defendant's allegation that he wanted trial counsel to call Clark as a witness was directly rebutted by the record which indicated that the trial court asked defendant if there were any other persons he wished to present on his behalf, and defendant replied, "[n]o, sir." The circuit court thus found that defendant was given an opportunity to object to counsel not calling a pertinent witness. In addition, the court pointed out that Burch did not represent defendant at trial, but instead, his trial counsel was Niesen and McElligott. The court noted that the petition and affidavits spoke regularly to Burch and "trial attorney" in the singular, which suggested that the information about Clark as an alibi witness may have been given to Burch at the time of the arrest,

but never transmitted to Niesen or McElligott thereafter. The court concluded that defendant failed to show a reasonable probability that the outcome of trial would have been different had counsel called Clark as a witness, and that defendant was unable to demonstrate it was arguable that counsel's performance was objectively unreasonable. Consequently, the circuit court summarily dismissed defendant's postconviction petition as frivolous and patently without merit.

¶ 23    On appeal, defendant contends the circuit court erred when it dismissed his petition because he raised an arguable claim that his trial counsel rendered ineffective assistance when counsel failed to investigate and present testimony from Clark as an alibi witness. Defendant points out that he asserted in his petition that he informed his trial counsel that he was with a relative at the time of the offense, and counsel assured him that Clark would be contacted and called to testify as an alibi witness at trial. Defendant notes that he provided an affidavit from Clark stating he was at her house. He asserts his claim is corroborated by Golladay's affidavit stating that she told Burch Clark was available to testify. Defendant argues that the record does not rebut Clark's statement that counsel did not contact her. Defendant further argues his allegation is not waived because it is based on matters outside the trial record, and the circuit court's reasoning for the dismissal was incorrect and based on improper conjecture. Defendant asks this court to reverse the circuit court's dismissal and remand his petition for second stage postconviction proceedings.

¶ 24    The State responds that the petition was properly dismissed because defendant forfeited his allegation when he failed to raise the issue on direct appeal. Alternatively, the State argues defendant's claim is rebutted by the record which indicates he affirmatively told the trial court that he had no other witnesses he wanted to testify at trial. In addition, the State argues that the affidavits from Clark and Golladay do not support defendant's claim because they refer only to

Burch, who was not trial counsel, and do not show that trial counsel was apprised of Clark's potential testimony, or that trial counsel never contacted Clark.

¶ 25 The Act provides a process whereby a prisoner can file a petition asserting that his conviction was the result of a substantial denial of his constitutional rights. 725 ILCS 5/122-1 (West 2018); *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). A postconviction proceeding is not a substitute for a direct appeal, but instead, is a collateral attack upon the conviction that allows only limited review of constitutional claims that could not be raised on direct appeal. *People v. Harris*, 224 Ill. 2d 115, 124 (2007). We review the circuit court's summary dismissal of defendant's postconviction petition *de novo*. *Coleman*, 183 Ill. 2d at 388-89. Under this standard, the reviewing court makes its own independent assessment of the allegations and is " 'free to substitute its own judgment for that of the circuit court to formulate the legally correct answer.' " *People v. Edwards*, 197 Ill. 2d 239, 247 (2001) (quoting *Coleman*, 183 Ill. 2d at 388).

¶ 26 Our supreme court has held that a postconviction petition may be summarily dismissed as frivolous or patently without merit if it has "no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). A petition lacks such an arguable basis when it is based on fanciful factual allegations or an indisputably meritless legal theory, such as a theory that is completely contradicted by the record. *Id.* At the summary dismissal stage, all well-pled allegations in the petition must be taken as true unless they are contradicted by the record. *Coleman*, 183 Ill. 2d at 381-82.

¶ 27 As a threshold matter, we find that the allegation of ineffective assistance of trial counsel raised by defendant in his postconviction petition could not have been raised on direct appeal, and therefore, it is not forfeited. Generally, a defendant is required to raise a claim of ineffective

assistance of counsel on direct appeal when it is apparent on the record or risk forfeiting the claim. *People v. Veach*, 2017 IL 120649, ¶¶ 46-47. However, when an ineffective assistance claim depends on facts that are not found in the record, procedural default will not preclude a defendant from raising that claim on collateral review. *Id.* ¶ 47. A claim based on what counsel should have done may rely on proof that is not contained in the record due to counsel's allegedly deficient representation. *People v. Tate*, 2012 IL 112214, ¶ 14. Thus, " 'a default may not preclude an ineffective-assistance claim for what trial counsel allegedly ought to have done in presenting a defense.' " *Id.* (quoting *People v. West*, 187 Ill. 2d 418, 427 (1999)).

¶ 28    In this case, defendant claims that prior to trial he told his trial counsel that he was at Clark's house at the time of the murder and that Clark would provide alibi testimony. Defendant alleges that counsel failed to investigate and call Clark to testify as an alibi witness which led to his conviction. Defendant provided affidavits from Clark and his mother, Golladay, averring that defendant was at Clark's house at the time of the offense, that Clark was willing to testify at trial, that Golladay shared that information with Burch, and that Burch never contacted Clark. Hence, defendant's allegation is based on information that is not contained in the trial record, and thus, it is not forfeited. *Tate*, 2012 IL 112214, ¶ 15.

¶ 29    Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Veach*, 2017 IL 120649, ¶ 29. To support a claim of ineffective assistance of trial counsel, defendant must demonstrate that counsel's representation was deficient, and as a result, he suffered prejudice that deprived him of a fair proceeding. *Strickland*, 466 U.S. at 687. Specifically, defendant must show that counsel's performance was objectively unreasonable and that there is a reasonable probability

that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Veach*, 2017 IL 120649, ¶ 30. However, at the first stage of postconviction proceedings, allegations of ineffective assistance of counsel are judged by a lower pleading standard, and a petition raising such claims may not be summarily dismissed if it is arguable that counsel's performance fell below an objective standard of reasonableness, and it is arguable that defendant was prejudiced. *Tate*, 2012 IL 112214, ¶¶ 19-20.

¶ 30 Pursuant to section 122-2 of the Act, defendant is required to attach to his petition affidavits, records, or other evidence that support his allegations. 725 ILCS 5/122-2 (West 2018). The purpose of this requirement is for defendant to show that the allegations in his postconviction petition are capable of objective or independent corroboration. *People v. Hall*, 217 Ill. 2d 324, 333 (2005) (citing *People v. Collins*, 202 Ill. 2d 59, 67 (2002)). The attached documentation "must identify with reasonable certainty the sources, character, and availability of the alleged evidence supporting the petition's allegations." *People v. Delton*, 227 Ill. 2d 247, 254 (2008).

¶ 31 Here, defendant's allegation that his trial counsel rendered ineffective assistance when counsel failed to investigate and present alibi testimony from Clark is without arguable merit. Taking the allegation in defendant's petition and the statements in the supporting affidavits as true, they do not show that trial counsel, Debra Niesen and Joseph McElligott, were ineffective.

¶ 32 In his petition and affidavit, defendant states that prior to trial, he told his trial counsel that he was at Clark's house at the time of the offense and that Clark would provide alibi testimony. Defendant claims counsel assured him Clark would be contacted and called to testify at trial, but thereafter did not investigate or call Clark. Defendant does not name his trial counsel in his petition or affidavit. However, he states in his petition that Clark's affidavit "affirms petitioner's own

assertion that petitioner's trial counsel had not contacted her." He also states that Golladay's affidavit shows "trial counsel assured her that Cynthia Clarke would be contacted and pursued as an alibi witness." Defendant asserts that their three affidavits show "counsel did not investigate or call Clarke to provide the exculpatory testimony."

¶ 33    The affidavits from Clark and Golladay specifically name Anthony Burch as the trial counsel who failed to contact Clark to testify as an alibi witness. Golladay stated that she called Burch on the evening of May 20 and told him Clark was willing to come forward and vouch for defendant's whereabouts on the night of the offense. She expressly averred that "Attorney Anthony Burch" assured her he would contact Clark and call her as an alibi witness if defendant went to trial. Golladay asserted, "Anthony Burch never contacted Cynthia to testify in regards to Paris whereabouts at the time of the crime[.]" Similarly, Clark stated that she told Golladay "to let the lawyer Mr. Anthony Burch know" about defendant's whereabouts and to tell him she would vouch for defendant. Clark concluded, "I was never contacted by Paris lawyer Mr. Anthony Burch nor was I called to testify on Paris behalf." Consequently, when defendant asserts in his petition that the affidavits from Golladay and Clark show that "trial counsel" assured Golladay that Clark would be contacted and called as an alibi witness, and counsel failed to investigate or call Clark to testify, defendant is referring to Burch as trial counsel.

¶ 34    The trial record, however, clearly shows Burch was not defendant's trial counsel. Burch escorted defendant when he turned himself in to police on May 20, 2010. Burch entered his appearance on May 22, 2010, and we presume Burch represented defendant at the preliminary hearing two days later. However, the record indicates that by August 4, 2010, Debra Niesen was already representing defendant as his appointed trial counsel. The trial court reappointed her that

day when the case number changed due to the superseding indictment. On August 25, 2010, appointed counsel Joseph McElligott entered his appearance for defendant. Niesen and McElligott jointly represented defendant from August 2010 throughout the remainder of his case, culminating with his jury trial in November 2014. The record does not indicate when Burch's representation ended, but it was prior to August 4, 2010, more than four years before trial.

¶ 35    Taking as true that Golladay told Burch that Clark was willing to testify as an alibi witness that defendant was at her house at the time of the murder, that Burch assured Golladay he would contact Clark and call her as an alibi witness, and that Burch never contacted Clark, those statements do not demonstrate ineffective assistance because Burch was not trial counsel. Moreover, the affidavits from Golladay and Clark do not establish that defendant's trial counsel, Niesen and McElligott, were told of Clark's potential alibi testimony, or that they or their investigator never interviewed Clark. Accordingly, defendant's allegation of ineffective assistance of trial counsel has no arguable basis in law or in fact. *Hodges*, 234 Ill. 2d at 16.

¶ 36    In addition, the trial record shows that, after defendant presented testimony from his witness, when admonishing defendant about his right to testify, the trial court explicitly asked him, "[a]re there any other persons you wish to present on your behalf?" Defendant replied, "[n]o, sir." Defendant made no mention of Clark or his desire to present alibi testimony. Defendant's claim that he wished to call Clark as an alibi witness is therefore contradicted by the record. *Id.*

¶ 37    Because defendant's claim of ineffective assistance of counsel had no arguable basis in law or in fact, the circuit court's summary dismissal of his postconviction petition was proper. *Id.*

¶ 38    For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 39    Affirmed.