FIRST DISTRICT
SIXTH DIVISION
June 30, 2022

No. 1-21-0509

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 7877 |
| | ) | |
| VONDELL BUSH, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justice Mikva and Justice Oden Johnson concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Vondell Bush, appeals the circuit court's dismissal of his postconviction petition at the first stage. On appeal, defendant contends that dismissal was improper where his petition set forth an arguable claim that his trial counsel provided ineffective assistance by (1) failing to present witnesses who would support his claim of self-defense and (2) failing to present available evidence that rebutted the State's argument that defendant fled after the shooting to avoid prosecution. For the following reasons, we reverse and remand for further proceedings.

¶ 2                          I. JURISDICTION

¶ 3    The trial court dismissed defendant's petition on February 2, 2021. This court allowed defendant to file his late notice of appeal on May 6, 2021. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 651 (eff. July 1, 2017), governing appeals in postconviction proceedings.

¶ 4                                    II. BACKGROUND

¶ 5      The following facts are substantially taken from this court's order in defendant's direct appeal, *People v. Bush*, 2019 IL App (1st) 170749-U.

¶ 6      Defendant was charged with six counts of attempted murder and one count of aggravated battery stemming from the shooting of Wayne Battles. At defendant's bench trial, Battles testified that on the morning of February 16, 2016, he was working as a janitor in the trash compactor room at the Lake Meadows apartment building in Chicago. He was 62 years old at the time. At approximately 6 a.m., a man whom he identified as defendant entered the room. In a hostile voice, defendant told Battles that he was "in [defendant's] business." Battles replied that he did not know what defendant was talking about. He had seen defendant in the building before, but knew he was not a resident.

¶ 7      After a brief exchange, defendant turned and walked toward the door. Battles followed, as he had finished his task. Defendant suddenly turned around, hit Battles in the jaw with his right fist, and yelled "I'm from the low end." Battles was stunned and grabbed a nearby hammer as he chased defendant toward the loading dock area. Defendant hit a wall, "bounced" off, and kept going. Battles chased defendant while holding the hammer, staying 3 to 3½ strides behind him, until they were outside the building. Battles testified that he never attempted to hit defendant with the hammer nor was he close enough to actually hit him.

¶ 8      Once outside, defendant slipped and fell on the concrete. He rolled, rose to his knee with a pistol in his hand, and then shot Battles in the left leg. Battles said, "man, you shot me?" and defendant responded, "you came at me with a hammer." Battles retreated into the docks and called

the police. He was treated at the hospital for a gunshot wound to his calf and later identified defendant in a photo array. At the time of trial, he suffered stiffness in his leg due to being shot.

¶ 9 On cross-examination, Battles testified that he and defendant were four or five feet apart when defendant fell. Battles stopped moving and was not standing over defendant when he shot the gun. He did not raise the hammer against defendant at any time but rather held it in his hand with his arm slightly bent toward his shoulder. Battles did not say anything to defendant as he chased him. During the chase, he did not see a gun on defendant.

¶ 10 Detective Angelo Velazquez testified that he was present for Battles's identification of defendant as the person who shot him. After obtaining a warrant, Velazquez learned the 41-year-old defendant was in custody in Las Vegas, Nevada. Defendant was extradited to Chicago.

¶ 11 Defendant testified that on February 16, 2016, he had spent the night at the Lake Meadows apartment building with his female friend Charnelle Price. Defendant wanted to talk to Battles because Battles had questioned Price about "inappropriate" topics and defendant wanted to ask him to stop speaking with her. After inquiring about the "nosy janitor," defendant was directed toward the trash compactor room. There, he asked Battles why he was so "nosy." Battles became aggressive, poking his finger at defendant. He seemed to calm down after defendant "stood still" and told Battles to leave Price alone. However, when defendant turned to walk away, Battles called him a "little b***." Defendant turned, Battles said it again, and defendant told him "f*** you." When Battles attempted to grab defendant's hair, he pushed him away. Battles then picked up a hammer and charged at defendant with the hammer "raised up." He ran out the door because he was scared that Battles would hit him with the hammer.

¶ 12    As defendant ran down the hall, Battles was "right behind" him. As soon as defendant crossed the threshold of the outside door, he fell forward. He got up and tried to escape Battles, who was behind him with the hammer still raised to his shoulder. A few steps later, defendant tripped and fell forward again. The second time he fell, he thought Battles was going to hit him in the head with the hammer while he was on the ground. Defendant tried to get up but could not because Battles was "right on top" of him, running toward him with the hammer raised.

¶ 13    When defendant fell a second time, his bookbag opened and his thermal lunch bag fell out. The lunch bag contained his loaded revolver. He took the gun and shot at Battles, who was three to five feet away from him. Battles was holding the hammer in a "striking position" at shoulder height or a little higher, and defendant thought he was going to hit him with it. He shot Battles because he wanted Battles to stop chasing him.

¶ 14    After defendant shot him, Battles dropped the hammer and ran into the building. He did not know his shot had hit Battles. Defendant's intent when he left the trash compactor room was to get away from Battles and to stop Battles from hitting him with the hammer. He wanted to run away once he got out to the loading dock. Defendant testified that although he had a gun with him that morning, he did not intend to use it against Battles. He had moved out of his apartment and did not want to leave the gun in the apartment where his girlfriend lived with his stepdaughter.

¶ 15    Defendant moved to Las Vegas two days later with his girlfriend, Heyring[1] Littlejohn, as they had planned to do before the shooting. He testified that at the time, there was no warrant for his arrest. Defendant acknowledged that when he was arrested in Las Vegas, his hair was cut and his hairstyle had changed from what it was when he shot Battles.

---

[1]Littlejohn is also referred to as "Hayreen" in other filings.

¶ 16    In closing argument, defense counsel argued that defendant shot Battles in self-defense. He disputed Battles's version of their confrontation in the compactor room and emphasized that defendant never took out his gun while he was in the building. Battles, however, chased defendant with a hammer and did not stop running toward him even as defendant fell. Counsel argued that defendant believed Battles intended to inflict great bodily harm upon him. Counsel stated that "[t]he afterwards behavior of leaving doesn't change that." This exchange between the court and defense counsel followed:

"Q. Doesn't it show evidence of guilty knowledge?

A. No, your Honor.

Q. Flight from the—

A. What it shows—

Q. Flight to Las Vegas.

A. No. What it shows is a bad choice on something, but it doesn't show any evidence of guilt."

¶ 17    The trial court acknowledged that "[i]n order for me to make findings on this, I have to make credibility determinations." Addressing whether defendant was justified in using force as he did, the trial court had "no doubt" that defendant was the initial aggressor in this case. It found his testimony that Battles was the aggressor, and not defendant, "totally incredible" and did not believe Battles pushed defendant. The court compared Battles and defendant, including their demeanor, size, and age, and noted that defendant was "at least 20 years younger than the victim."

¶ 18    Although Battles picked up a hammer and chased defendant out of the building, the court found that Battles had "every right to chase [defendant] out of the building." Also, there was not

consistent testimony on whether Battles brandished the tool as a weapon. As Battles chased defendant, he never indicated that defendant was in danger or that he intended to inflict harm on defendant. The fact that Battles was holding a hammer "doesn't necessarily mean that the defendant had a right to turn around and use the gun."

¶ 19 The court stated that defendant, as the initial aggressor, was entitled to use force "in limited circumstances." He may respond forcefully if the force used against him "is so great that he reasonably believes that he is in imminent danger of death or great bodily harm and he exhausted every reasonable means to escape such danger." An aggressor may also use force if "in good faith he withdraws from physical contact" and clearly indicates his intent to withdraw, but the assailant continues to use force. The court found, however, that neither statutory exemption applied.

¶ 20 Instead, the court viewed defendant's testimony as "very, very incredible" and "insulting to the [c]ourt." The court also found it "convenient" that defendant was scheduled to move to Las Vegas "right after the shooting" and noted he was "caught later with a changed appearance." It believed that defendant "had guilty knowledge here, and the reason he fled was because he knew he did something wrong." The court concluded that defendant was not "in any way, shape, or form ever intimidated by the victim." Therefore, it did not believe "he has a subjective or an objective legal defense of self-defense in this matter. I believe any force that was used was excessive." The trial court found defendant guilty of aggravated battery and not guilty of attempted murder.

¶ 21 Defendant filed a motion for a new trial. At the hearing on the motion, the court disagreed with counsel that defendant acted in self-defense when he shot Battles. It pointed out that defendant "was looking for the victim and confronted the victim." After he found Battles, "it was a hostile situation, and there's a confrontation and there's a punch thrown." The court again noted that

defendant's move to Las Vegas shortly after the shooting also "goes to his mental state at the point in time." The court believed that defendant did not think the shooting was justified or he would have "stay[ed] on the scene." As the court explained, "[h]e leaves the state, which I found to be totally incredible as to the purpose that he said, that he was just going to be leaving the state anyway." Defendant's flight from the state indicated "[t]hat he didn't have a reasonable belief in self-defense."

¶ 22    Considering "the totality of the circumstances," the court found that defendant "was and continued to be the aggressor in this matter, and the shooting of the victim was to facilitate his escape and not in any type of self-defense." It denied defendant's motion for a new trial and sentenced defendant to 15 years' imprisonment.

¶ 23    On direct appeal, defendant argued that his aggravated battery conviction should be reversed because the State failed to prove beyond a reasonable doubt that he was not acting in self-defense when he shot Battles. Noting that the issue turned on the trial court's credibility determinations, this court affirmed defendant's conviction. We found no merit to defendant's self-defense argument where "the evidence supports a finding that Battles did not use force against defendant, and defendant did not reasonably believe he was in imminent danger of death or great bodily harm when he shot Battles." *Bush*, 2019 IL App (1st) 170749-U, ¶ 23.

¶ 24    Defendant filed a *pro se* postconviction petition. Relevant to this appeal, he alleged that his trial counsel was ineffective for failing to call as witnesses Littlejohn and Rena Livingston. Attached to his petition was Littlejohn's affidavit. Therein, she stated that she received a job offer as a phlebotomist in Las Vegas around the first week of February in 2016. She and defendant planned to make a trip to Las Vegas on February 18, 2016, so that she could accept the position

and find an apartment. They chose that date because they were first going to help her daughter move into an apartment at Lake Meadows on February 15. Littlejohn stated that she and defendant arrived in Las Vegas on February 20, 2016, and she has been living there ever since.

¶ 25    Littlejohn further stated that on February 16, 2016, before they left for Las Vegas, she and defendant drove to the Cook County courthouse and went to the cafeteria, where they met with attorney Daniel Franks. After they spoke, defendant got a signed receipt of $500. The receipt was on the back of Franks' business card and showed that defendant paid Franks a retainer fee. Attached to defendant's petition was a copy of a card on which was written, "Received $500.00 2/16/16," with an illegible signature.

¶ 26    Also attached to the petition was defendant's affidavit. He stated that he "attempted to contact Rena Livingston in regards to obtaining an affidavit attesting to the information she told me about" Battles. Livingston told defendant that Battles "was on the football team and has always been a very large man over 6 ft and weighing over 200(+) lbs. He went by the nickname 'Tank' and has always been known to be an overly aggressive and irritable person." Livingston was defendant's mother's best friend. She told defendant's mother "that she did not want to be involved with any legal proceedings."

¶ 27    In its written order, the court considered Littlejohn's statements that she and defendant had planned to move to Las Vegas in February, thereby implying that defendant did not flee to avoid prosecution. The court found, however, that

"right after the incident [defendant] obtained counsel, Daniel Franks. The counsel advised [defendant] to turn himself in. [Defendant] failed to do so. Rather, he fled the state. Moreover, this court did not consider the fleeing before coming to judgment. Furthermore,

the affidavit of [defendant's] fiancé[e] does not claim of self-defense, only at best evidence that he might not have fled the jurisdiction."

¶ 28   The court found defendant's affidavit that set forth Livingston's statements about Battles "unacceptable," noting she did not present her own affidavit. Also, the statements therein were "conclusory" and "unspecific regarding time and detail." The court reiterated that Battles testified at trial and thus it had the opportunity "to look at the discrepancy between the age, height, weight of the defendant and the alleged victim in this matter." The court dismissed defendant's petition as frivolous and patently without merit. This court allowed defendant's late notice of appeal.

¶ 29                                 III. ANALYSIS

¶ 30   The Post-Conviction Hearing Act (Act) provides a three-stage process for adjudicating a postconviction petition. See 725 ILCS 5/122-1 (West 2018). Defendant's petition was dismissed at the first stage, where the trial court may dismiss a petition only if it is frivolous or patently without merit. *People v. Harris*, 224 Ill. 2d 115, 125-26 (2007). A petition is frivolous or patently without merit if it has "no arguable basis either in law or in fact" or relies on "indisputably meritless" legal theories. *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). A legal theory is meritless if it is completely contradicted by the record. *Id.* at 16-17. Because most postconviction petitions at this stage are drafted by *pro se* defendants, the threshold for survival at is low. *People v. Allen*, 2015 IL 113135, ¶ 24. We review the trial court's first stage dismissal *de novo*. *People v. Swamynathan*, 236 Ill. 2d 103, 113 (2010).

¶ 31   At the first stage, a petition that alleges ineffective assistance of counsel "may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Hodges*, 234

Ill. 2d at 17. The "arguable" test indicates "that first-stage postconviction petitions alleging ineffective assistance of counsel are judged by a lower pleading standard than are such petitions at the second stage of the proceeding." *People v. Tate*, 2012 IL 112214, ¶ 20. To adequately plead a claim of ineffective assistance of counsel, the petition must satisfy both prongs of the test. *Hodges*, 234 Ill. 2d at 17.

¶ 32    In his petition, defendant contends that trial counsel provided ineffective assistance when he failed to call Littlejohn as a witness at trial or present her statement. Defendant argues that Littlejohn would have supported his position that he did not flee to Las Vegas after the shooting to avoid prosecution. While the decision to call witnesses is one of trial strategy generally immune from ineffective assistance of counsel claims, counsel's failure to call witnesses who would have contradicted the State's evidence and supported the defense can indicate deficient performance. *People v. Willingham*, 2020 IL App (1st) 162250, ¶ 48.

¶ 33    At his bench trial, defendant argued that he acted in self-defense when he shot Battles because Battles was chasing him with a hammer. The trial court found, however, that defendant was the initial aggressor in this case. The justification of self-defense is not available to someone who

"initially provokes the use of force against himself, unless:

(1) Such force is so great that he reasonably believes that he is in imminent danger of death or great bodily harm, and that he has exhausted every reasonable means to escape such danger other than the use of force which is likely to cause death or great bodily harm to the assailant; or

(2) In good faith, he withdraws from physical contact with the assailant and indicates clearly to the assailant that he desires to withdraw and terminate the use of

force, but the assailant continues or resumes the use of force." 720 ILCS 5/7-4(c) (West 2018).

¶ 34    In order for defendant to succeed on his self-defense claim, he had to show that one of these exceptions applied. At trial, defendant testified that while he was unarmed, Battles chased him from the building with a hammer that was "raised up." Defendant stated that even after he fell, Battles continued to come toward him with the hammer raised to shoulder-height. Only then did he reach for his gun to shoot Battles because he believed that he was in imminent danger of great bodily harm.

¶ 35    The trial court, however, found Battles's testimony, which contradicted defendant on key details, credible. It further found defendant's move to Las Vegas after the shooting "convenient" and noted he was "caught later with a changed appearance." The court believed that defendant "had guilty knowledge here, and the reason he fled was because he knew he did something wrong." When addressing defendant's motion for a new trial, the court again noted that defendant's move to Las Vegas shortly after the shooting "goes to his mental state at the point in time." The court surmised that defendant did not believe the shooting was justified or he would have "stay[ed] on the scene." The court found defendant's testimony "incredible" and concluded that his flight to Las Vegas showed "he didn't have a reasonable belief in self-defense."[2]

¶ 36    A petition is frivolous or patently without merit only if it has no arguable basis either in law or in fact, which is the case when it "is based on an indisputably meritless legal theory or a

_____

[2]We note that when reviewing the petition, the trial court found that defendant's move did not factor into its judgment at trial. This finding, however, is belied by the record as indicated by the foregoing statements.

fanciful factual allegation" or is "completely contradicted by the record." *Hodges*, 234 Ill. 2d at 16. None of these conditions apply.

¶ 37    It is certainly arguable that the failure to call Littlejohn as a witness was deficient performance and prejudiced defendant in his claim of self-defense. The trial court acknowledged that "[i]n order for me to make findings on this, I have to make credibility determinations." If called as a witness, Littlejohn would confirm that prior to the shooting she and defendant had already planned to leave for Las Vegas on February 18 because she was offered a job there. Her statements would have corroborated defendant's testimony and contradicted the State's evidence that defendant was found in Las Vegas with a different haircut, thus implying that he had fled to avoid prosecution. Witness testimony that supports defendant's theory of the case, which defense counsel failed to present at trial, arguably supports a claim of deficient performance. See *id.* at 20-21.

¶ 38    The failure to present Littlejohn's testimony also arguably prejudiced defendant. The trial court ultimately found Battles to be a more credible witness and did not believe defendant's testimony that he and Littlejohn had planned to move to Las Vegas for her job. Instead, the court concluded that defendant's flight to Las Vegas showed "he didn't have a reasonable belief in self-defense." If Littlejohn had testified, the trial court would have observed her demeanor and could have found her to be a credible witness. Her credible testimony arguably could have made defendant more believable as a witness and could have altered the court's finding that defendant fled after the shooting. With no finding that defendant fled to Las Vegas, the court would have no basis to conclude that his flight indicated "he didn't have a reasonable belief in self-defense."

¶ 39    Nor do we find that the record completely contradicts defendant's claim that he did not flee. We note that in its written order dismissing defendant's petition, the trial court found that

"right after the incident [defendant] obtained counsel, Daniel Franks. The counsel advised [defendant] to turn himself in. [Defendant] failed to do so. Rather, he fled the state." Attorney Franks, however, did not testify at trial, and we have found no evidence supporting this statement in the record. Defendant testified at trial only that he felt free to leave for Las Vegas because there was no warrant for his arrest. At this stage of the proceedings, the trial court is foreclosed from engaging in fact-finding or making credibility determinations because all well-pleaded facts in the petition and accompanying affidavits are taken as true. *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998).

¶ 40     The State argues, however, that the record does rebut defendant's claim that he wanted additional witnesses to testify at trial, as shown by the trial court's inquiry of defendant:

> "Q. Now, Mr. Bush, you understand that [defense counsel] is resting the case in chief. That means there will be no witnesses additional witnesses called. Do you understand that?
>
> A. Yes, your Honor.
>
> Q. While the decision to call witnesses is your attorney's, did you talk with [defense counsel] about any witnesses you may have wanted to call in the trial?
>
> A. Yes, but she wasn't willing to come.
>
> Q. So do you agree with [defense counsel's] decision not to call any additional witnesses and rest right now?
>
> A. Yes.
>
> Q. Okay. All right. And you talked with him about any witnesses that you wanted to have called. Is that correct?

A. There was only one.

Q. Okay. Did you talk to him about that?

A. Yes."

The State cites an unpublished order, *People v. McGee*, 2021 IL App (1st) 190362-U, as persuasive authority in support of their argument. In *McGee*, the record showed that the trial court had asked the defendant whether there were any other persons he wished to present on his behalf and he answered, " '[N]o.' " *Id.* ¶ 36. Since the defendant did not mention his desire to present Clark as an alibi witness, the court found his claim that counsel was ineffective for failing to call Clark at trial was contradicted by the record. *Id.*

¶ 41    While we acknowledge *McGee*, we choose not to follow it given the facts of this case. Here, defendant stated only that he spoke with counsel about one witness and that he agreed with counsel's decision not to call additional witnesses. Defendant's agreement with trial counsel's decision does not necessarily preclude a finding that counsel was deficient in making that decision. Defendant stated in his petition that defense counsel assured him that he "would speak to [Littlejohn] and get her statement, but never did." Nothing in the record indicates why counsel did not investigate Littlejohn as a witness or that defendant explicitly agreed that Littlejohn need not be called. We therefore disagree that defendant's claim is contradicted by the record.

¶ 42    The State also argues that dismissal was proper because (1) Littlejohn never stated in her affidavit that she was willing to testify at trial; (2) defendant had already testified to the information contained therein and, as such, Littlejohn's statements would be merely cumulative to his testimony; and (3) the information in Littlejohn's affidavit did not address the ultimate issue of self-defense. We address each contention in turn.

¶ 43    Although Littlejohn's affidavit did not state that she was available and willing to testify to the facts therein, her omission is not fatal to defendant's petition. At the first stage, a court must take the allegations in the petition as true and construe them liberally. *Allen*, 2015 IL 113135, ¶ 41. Consistent with that rule, it may be inferred from Littlejohn's affidavit that her willingness to provide the statements indicates her willingness to testify. See *id.*

¶ 44    We also disagree that Littlejohn's testimony would have been merely cumulative to evidence presented at trial. "Evidence is considered cumulative when it adds nothing to what was already before the jury." *People v. Ortiz*, 235 Ill. 2d 319, 335 (2009). While defendant did testify that he and Littlejohn had already planned to move to Las Vegas, regardless of the shooting, no other evidence was presented to corroborate his testimony. Littlejohn's testimony that she was offered a job in Las Vegas in February 2016, and she and defendant moved to Las Vegas so she could accept the offer, was new information which would have contradicted the State's inference that defendant fled to Las Vegas to avoid prosecution.

¶ 45    Finally, Littlejohn's statements were relevant to the ultimate issue of defendant's credibility regarding his move to Las Vegas. The trial court found defendant's explanation for why he left "to be totally incredible as to the purpose that he said, that he was just going to be leaving the state anyway." It concluded that defendant fled to Las Vegas because he did "something wrong" and "didn't have a reasonable belief in self-defense." While Littlejohn did not observe the shooting, her statements arguably could have bolstered defendant's credibility in a case where the trial court admittedly rested its judgment on whether it found Battles's version of events, or defendant's version, credible.

¶ 46    Since we find that defendant's petition has met the low threshold required to allege his ineffective assistance of counsel claim as to Littlejohn, we reverse the trial court's dismissal of his

postconviction petition at the first stage and remand for second-stage proceedings. We need not address the remaining claims in his petition because the Act does not permit dismissal of individual claims at the first stage. *People v. Rivera*, 198 Ill. 2d 364, 370-71 (2001). Under the plain language of the Act, the court must "docket the entire petition, appoint counsel, if the petitioner is so entitled, and continue the matter for further proceedings in accordance with sections 122-4 through 122-6. The State is then given the opportunity to answer or otherwise plead." (Emphasis omitted.) *Id.* at 371.

¶ 47                                    IV. CONCLUSION

¶ 48     For the foregoing reasons, the judgment of the circuit court is reversed and the cause remanded for further proceedings.

¶ 49     Reversed and remanded.

2022 IL App (1st) 210509

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 16-CR-7877; the Hon. Charles P. Burns, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Jennifer L. Bontrager, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, David Iskowich, and Hareena Meghani-Wakely, Assistant State's Attorneys, of counsel), for the People. |